**UNITED STATES of America,
Appellee,**

v.

**Hector Enrique MERCADO, Appellant.**

**No. 210, Docket 72–1651.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1972.

Decided Nov. 22, 1972.

John J. Kenney, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. of New York, and John W. Nields, Jr., Asst. U. S. Atty., on the brief), for appellee.

Sheila Ginsberg, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for appellant.

Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.

LUMBARD, Circuit Judge:

This is an appeal from a judgment of the Southern District of New York, rendered April 28, 1972, wherein the district judge found that appellant Hector Mercado had violated the conditions of

his probation, and he revoked probation and imposed a three year term of imprisonment. The major issues before Judge Ryan were appellant's contentions that he was incompetent at the time of the acts that he was charged with committing and that he was incompetent at the time of the hearing. Judge Ryan found that Mercado was competent at both times and revoked probation.

On March 13, 1970, Mercado pleaded guilty to one count of an indictment charging him with embezzling letters from the mail while he was a postal employee, in violation of 18 U.S.C. § 1709. He was sentenced as a youth offender under 18 U.S.C. § 5010(a) to a three year term of probation.[1]

According to Morris Kuznesof, Mercado's probation officer, Mercado appeared to adjust well to probation during the next eight months.[2] He was enrolled at New York University in plant ecology and maintained a "B+" average. However, in January, 1971, appellant began to behave oddly. He dropped out of school, and in conversations with Kuznesof his thinking became confused and he exhibited inappropriate reactions. It was during this period that Mercado seems to have developed his strong feelings for Cynthane Morgenweck, a classmate of his at college, with whom he had hardly exchanged a word. Mercado explained to his probation officer that he had dropped out of school because he found it too painful to be near Miss Morgenweck and that he followed her around like a "puppy dog."

On April 13, 1971, a probation report was filed charging Mercado with having violated probation by failing to go to school or get a job and by refusing to follow the directions of his probation officer. A hearing on the alleged violations was held by Judge Ryan on October 7, 1971. Mercado took the position that he was suffering from mental illness, which made it impossible to comply with the requirements of his probation. Dr. Richard Sallick, a court-appointed psychiatrist and director of the Payne-Whitney out-patient clinic of New York Hospital, testified in support of his contention. On the basis of two personal interviews and a psychological examination done at Dr. Sallick's request by a Dr. Clarkin, Dr. Sallick concluded that Mercado was indeed incompetent.[3] Accepting this testimony, Judge Ryan declined to find that Mercado had violated his probation, but committed him instead to the custody of the Attorney General under 18 U.S.C. § 5010(e), so that a study and evaluation of Mercado's mental condition could be made.[4]

On February 3, 1972, after defendant's return from the Federal Reformatory, Petersburg, Virginia, where the examination had been conducted,[5] anoth-

1. 18 U.S.C. § 5010. Sentence.
   (a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

2. Kuznesof testified at the October 7, 1971 hearing on Mercado's initial probation violation. See p. 649, *infra*.

3. Dr. Clarkin's report refers to a diagnosis of a schizophrenic process with paranoid ideation. Dr. Sallick in a letter to Mr. Lawrence Kessler of the Legal Aid Society, dated June 18, 1971, stated that his clinical impression coincided "very well" with Dr. Clarkin's report.

4. 18 U.S.C.A. § 5010. Sentence
   (e) If the court desires additional information as to whether a youth offend-

er will derive benefit from treatment under subsections (b) or (c) [dealing with sentencing youth offenders to the custody of the Attorney General for treatment and supervision] it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order or such additional period as the court may grant, the Division shall report to the court its findings.

5. The original 60 days was extended twice, first for an additional 45 days and then for another 15 days.

er hearing was held. The report submitted by the government contained a psychological evaluation by Dr. Kurt Morbitzer, who examined Mercado while he was at the Federal Reformatory and found him to be competent. Nevertheless, Judge Ryan continued Mercado on probation with the special condition that he not annoy Cynthane Morgenweck or her family.

The following day, February 4, 1972, a new petition was filed alleging that Mercado had violated the special condition of his probation by telephoning the Morgenweck family four times the previous evening. In addition to a determination of the substantive charges arising out of these telephone calls, the government agreed that a hearing would have to be held pursuant to 18 U.S.C. § 4244 on whether Mercado was competent to assist in his defense.[6]

That hearing, the one being appealed from, was held on April 28, 1972. The defense called Dr. Sallick who testified that, in addition to his previous interviews with the defendant, he had conducted another examination of Mercado on February 18, 1972. Thus, Dr. Sallick's examination was the most recent one, as it occurred after the defendant had returned from Petersburg, Virginia. Dr. Sallick testified that Mercado at first seemed much improved at the February 18 meeting. However, after some conversation it became clear that Merca-

do's "mental status had not significantly changed . . . . He continued to be rather unrealistic in his thinking, to manifest the continuing unrealistic concern and plans with regard to the young lady whom he had called." In addition, Mercado evinced the same inappropriate reactions that he had exhibited during the earlier examinations. The doctor found him confused about "some aspects of his own behavior, particularly with regard to his making the calls that night" and his thinking was to some degree "rambling" and "delusional." On the basis of these observations, Dr. Sallick asserted that the original diagnosis of a schizophrenic illness of a paranoid type was probably correct and gave his opinion that the defendant was not responsible for the acts which violated his probation; though the defendant was able to understand the wrongfulness of his conduct, he was unable to conform his conduct to the requirements of the law. See United States v. Freeman, 357 F.2d 606, 622 (2d Cir. 1966).

Concerning Mercado's competence to stand trial, Dr. Sallick testified that although Mercado could understand the charges against him, he was not able to aid in his own defense. See 18 U.S.C. § 4244; Lyles v. United States, 103 U.S. App.D.C. 22, 254 F.2d 725, 729–730 (1957). On cross-examination Dr. Sallick admitted that the defendant was perfectly capable of recalling past events

---

6. 18 U.S.C. § 4244. Mental incompetency after arrest and before trial

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such reasonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. . . .

and discussing them with his attorney, and that he was able to comprehend and discuss any possible defenses to the charges that he might have. However, Dr. Sallick did stress that Mercado was unable to explain his motivation in a rational way.

The government did not call any witnesses in rebuttal. It had intended to call Dr. Morbitzer, who had examined Mercado at the Federal Reformatory, Petersburg, Virginia, but because of an illness in Dr. Morbitzer's family, he was unable to attend the hearing. Instead, over defendant's objection, the government sought to rely on the eleven page report which had been done at the Federal Reformatory, especially Dr. Morbitzer's one-and-one-quarter-page psychiatric report contained therein.

According to Mercado's uncontradicted testimony, Dr. Morbitzer had had only one interview with him, which lasted a half hour to forty-five minutes. Dr. Morbitzer disagreed with the previous diagnosis.[7] He stated that "the psychotic or neurotic features evidenced were [not] particularly detrimental or . . . significant" and his diagnosis was that Mercado was an emotionally unstable personality.

Also included in the eleven page study was a psychological report by a Dr. Martin Bohn, Chief of the Psychology Program at the Federal Reformatory, Petersburg, Virginia,[8] in which Dr. Bohn seems to have found many of the same symptoms as Dr. Sallick. He stated that Mercado could not maintain a single train of thought, smiled at inappropriate times, and had unusual thought patterns. Dr. Bohn concluded that "some schizophrenic process [is] involved, although the paranoid features are not readily evident at present."

On the basis of this evidence, Judge Ryan concluded that the defendant was competent to aid in his defense and that he was competent at the time of the commission of the acts charged. Judge Ryan stated that Dr. Sallick was perhaps too sympathetic to the defendant and that this had interfered with his professional judgment. The defendant then pleaded not guilty to the substantive charges that he had made several telephone calls to the Morgenweck Family on the evening of February 3, 1972. The government called Mrs. Morgenweck, Cynthane's mother, who testified that the calls had occurred. The government rested, and Mercado took the stand in his own defense. He admitted making the calls and tried to explain why. He also recounted his experiences during his conversations with Dr. Morbitzer and Dr. Sallick. The government declined to cross-examine the defendant and Judge Ryan proceeded to revoke probation and impose a three year term of imprisonment.

Mercado raises three objections to the district court's findings of competence and responsibility. Mercado first claims that both results were against the weight of the evidence. He also claims two violations of his constitutional rights: that the trial judge's reliance on Dr. Morbitzer's hearsay report deprived appellant of his due process right to a fair hearing and that it also violated his sixth amendment right to confrontation. Although Mercado raises these same three objections to both findings of the district court, for convenience we will consider each finding separately. Because of our disposition of this case we do not reach the constitutional questions raised by appellant.

---

7. The doctors who examined Mercado at the Federal Reformatory, Petersburg, Virginia, apparently had Dr. Sallick's and Dr. Clarkin's reports available to them.

8. Six of the eleven pages of the report deal with general medical and biographi-

cal information, not relevant to an analysis of Mercado's mental condition. Three pages deal directly with Mercado's mental state. These pages contain Dr. Morbitzer's psychiatric report and Dr. Bohn's psychological evaluation. The remaining two pages are summaries.

## I

■ With regard to Mercado's competence at the time he committed the acts which violated his probation, we have examined the record of the April 28, 1972 hearing and we agree with appellant that there was insufficient evidence to support a finding that Hector Mercado was competent when he telephoned the Morgenweck family on February 3.

Dr. Sallick had had extensive contact with the defendant over a period of months. He testified at length and in detail about the symptoms that he had observed and about the reasons for his view that Mercado was incompetent. His diagnosis of paranoid schizophrenia was supported by Dr. Clarkin's report, and it appears that the government's own psychologist, Dr. Bohn, was in at least partial agreement. Dr. Sallick's professional credentials were well known to the court and the parties, and his statements were fully tested by cross-examination. Thus, despite Judge Ryan's opinion that Dr. Sallick was no longer totally impartial, there was certainly adequate evidence of incompetency to require the government, if it sought a finding that the defendant was sane at the time of the acts charged, to come forward with proof to that effect.

■ The government relied entirely on Dr. Morbitzer's brief report which was the result of only one short interview. Dr. Morbitzer's opinion contradicted the in-court testimony that was offered by the defendant's psychiatrist, and so it became extremely important to be able to probe in depth the reasoning behind his conclusions and the facts on which they were based. This was impossible because Dr. Morbitzer did not testify. While the strict rules of evidence are not applicable in a probation hearing, United States v. Cates, 402 F.2d 473, 474 (4th Cir. 1968), where, as here, a brief and conclusory written report is offered on the crucial point at issue, and there exists no adequate opportunity to challenge the logic and foundation of its results, the court must of necessity accord it less weight than in-court testimony. Therefore, in light of the insubstantial evidence presented, we conclude that the government did not effectively rebut the defendant's evidence of insanity at the time of the act charged.

## II

■ Judge Ryan's holding that appellant Mercado was competent to aid in his defense must be viewed in a somewhat different light. The standard of competency to stand trial differs from the standard for criminal responsibility and involves only whether the accused can understand the nature of the charges against him and can assist in his defense in such ways as providing accounts of the facts, names of witnesses, etc. See Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725, 729–730 (1957). Dr. Sallick testified that Mercado was quite able to recall the relevant past events and discuss them with his attorney. He also stated that Mercado could understand the possible defenses to the charges. The only thing that Mercado was unable to do was to explain why he had committed the acts with which he was charged.

■ We think that from Dr. Sallick's testimony alone it was clear as a matter of law that Mercado was competent to aid in his defense. The fact that Mercado could not explain the reason for his acts does not detract from this conclusion. There is no merit, therefore, to appellant's claim that Judge Ryan's finding that he was competent at the time of trial was not supported by the record.

## III

■■ We should note that the district judge and both parties seem to have assumed that, if established, Mercado's lack of criminal responsibility for his acts in violation of the terms of his probation would be a defense to revocation of his probation. We can find no authority for this proposition, and we do not believe the question is so free from doubt that it should be determined without benefit of brief or argument. How-

ever, we see no need for deciding the question at this time. 18 U.S.C. § 5010 gives the district judge a great deal of discretion in sentencing of youthful offenders and allows him to prescribe that treatment from which the individual will derive the most benefit. Judge Ryan's initial action of putting Mercado on probation necessarily reflected his judgment that Mercado "[did] not need commitment," 18 U.S.C. § 5010(a), at that time. It seems clear, at least on the record before us, that a term of imprisonment for Mercado will still not serve any useful rehabilitative or deterrent function and certainly will do nothing to cure his mental illness. If Judge Ryan had not erroneously concluded that Mercado was responsible for his violation of probation, he might well have acted upon Dr. Sallick's suggestion that he could have Mercado admitted as a patient at the Payne-Whitney Clinic. Certainly the district court has the power to make it a condition of continuing Mercado's probation that he apply for and obtain admission to that or a similar institution for treatment.

The judgment of the district court is reversed and the case remanded for further proceedings not inconsistent with this opinion.