**UNITED STATES of America,
Plaintiff,**

v.

**Patricia Campbell HEARST, Defendant.**

**Cr. No. 74–364–OJC.**

United States District Court,
N. D. California.

Nov. 7, 1975.

James L. Browning, Jr., U.S. Atty., F. Steele Langford, David P. Bancroft, Edward P. Davis, Jr., Asst. U.S. Attys., San Francisco, Cal., for United States.

F. Lee Bailey, J. Albert Johnson, Boston, Mass., Thomas J. May, Brookline, Mass., for defense.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, Chief Judge.

The defendant is under indictment by the Grand Jury of the United States District Court for the Northern District of California on two counts: Armed Bank Robbery (18 U.S.C. § 2113(a), (d)) and Use of Firearm to Commit a Felony (18 U.S.C. § 924(c)(1)). Pursuant to this Court's order dated September 25, 1975, the defendant has undergone a series of psychiatric examinations conducted by three court-appointed psychiatrists and one court-appointed psychologist. The purpose of these examinations has been to assist the Court in determining whether the defendant is presently competent to proceed in the criminal action brought against her and to stand trial. A hearing was had on notice and the parties were given the opportunity to cross-examine the court-appointed psychiatrists or to present additional psychiatric testimony. They had no cross-examination to make, or any additional testimony to offer.

Having studied the written reports submitted by the psychiatrists and psychologist conducting these examinations, and having heard the arguments presented by respective counsel in open court, the Court is of the opinion, for the reasons that are expressed below, that the defendant is at the present time competent to assist in her own defense and to stand trial on the charges listed in the indictment.

■ The test for ascertaining whether a defendant is competent to stand trial, as enunciated by the Supreme Court, is

> whether [the accused] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

*Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). And see *McKinney v. United States,* 487 F.2d 948 (9th Cir. 1973). In applying this test the courts have been careful to distinguish it from the test or standard to be used in determining criminal responsibility. *United States v. Mercado,* 469 F.2d 1148 (2d Cir. 1972); *Floyd v. United States,* 365 F.2d 368 (5th Cir. 1966); *Swisher v. United States,* 237 F.Supp. 921 (W.D.Mo. 1965) aff'd, 354 F.2d 472 (8th Cir. 1966); *Higgins v. McGrath,* 98 F.Supp. 670 (W.D.Mo.1951). Thus, even a finding of severe mental illness, sufficient to exculpate the defendant if found to exist at the time of the commission of the offense, would not necessarily render the defendant incompetent to stand trial. See, e. g., *Mercado, supra; Lyles v. United States,* 103 U.S.App.D.C. 22, 254 F.2d 725, 729–30 (1957); *cert. denied* 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958); *United States v. Adams,* 297 F.Supp. 596, 597–98 (S.D.N.Y.1969); *Swisher, supra.* As stated in *United States v. Mercado, supra* at 1152:

> The standard of competency to stand trial differs from the standard for criminal responsibility and involves only whether the accused can understand the nature of the charges against him and can assist in his defense in such a way as providing accounts of the facts, names of witnesses, etc. . . .

■ The psychiatrists and psychologist enlisted by the Court to assist it in determining competency of the defendant to stand trial have been most helpful in providing a psychiatric profile of what is clearly a troubled young woman. Although the reports of their findings vary considerably as to points of emphasis and approach taken, the Court believes that, in the aggregate, they warrant the conclusion that the defendant is competent to stand trial. The resolution of this

issue is, of course, solely within the discretion and competence of the trial judge, who must seek "not only a clinical psychiatric judgment but also a judgment based upon a knowledge of criminal trial proceedings." *Gunther v. United States*, 94 U.S.App.D.C. 243, 215 F.2d 493, 496–97 (1954). The psychiatric reports do, however, furnish an evidentiary basis for determining the competence of the defendant in light of the *Dusky* test, set forth *supra*.

■ Drs. Lunde, Pollack and Singer all agree that their examinations revealed no evidence of psychosis or other serious mental disease or defect in the defendant, such as would deprive her of competency. In addition, physical and neurological examinations of the defendant, conducted in conjunction with the psychiatric examinations, evidenced no significant debilitating physical or neurological disorders.

Dr. Lunde found that "Ms. Hearst is oriented to date, place and person," and that she understood the charges against her as explained by her attorney and was able to describe them to Dr. Lunde during the course of the examinations. (Lunde, 5:3, 6:1.)[1] According to Dr. Lunde, she was also "able to describe the bank robbery charge and seemed conversant with the fact that there was a distinction between this Federal charge and other possible State charges." (Lunde, 6:1). This finding would seem to be indicative of the defendant's rationality, perception and communicative ability. Dr. Lunde concluded his report by saying:

It is my opinion that Patricia Campbell Hearst has a rational, as well as a factual understanding of the charges and proceedings against her. It is my opinion that she is competent to cooperate rationally in her own defense, but that her ability to do so is somewhat diminished because of the nature of her present emotional state. (Lunde, 6:3)

Despite the qualifying language of "diminished ability," the conclusion is inescapable that Dr. Lunde found the defendant to be competent under the *Dusky* test.

Dr. Pollack is perhaps even more direct in concluding that the defendant is legally competent. His report states that tests conducted by himself and Dr. Singer

reveal no evidence of marked or severe mental or emotional disorder. Some inconsistencies in Miss Hearst's mental functions are present; and she does manifest evidence of mild difficulties in thought processes, problems of inhibition, constraint, and difficulty in dealing with emotionally disturbing experiences to a degree that causes trouble in her ability to concentrate on and attend to these experiences; but none of these disturbances is severe and *none present to a degree that could allow the inference that she was mentally incompetent to stand trial.* (Pollack, 9:2) [Emphasis added.]

He continues:

I would like to stress that my clinical impression of Miss Hearst is that she is *not* markedly or severely disturbed psychiatrically. She is *not* in imminent danger of becoming severely mentally ill, and there is only evidence of her rather rapid and strong clinical improvement, no evidence of a worsening of her mental state. . . . My clinical impressions are supported by all of the material I have reviewed and by my consultations with Doctors West and Singer. (Pollack, 10:1.) [Emphasis by Dr. Pollack.]

Continuing:

Miss Hearst fully, meaningfully, factually and rationally understands the criminal charges pending against her. During my exploration of these charges, she demonstrated full understanding of the significance of the bank robbery charges, the legal consequences to her if she went to trial, and the possible penalties if she were con-

1. Citations are to page: and paragraph of the referenced reports.

victed. She was able to appreciate the plea issues and noted that she would discuss these with her lawyers. The defendant was fully appreciative of her legal relationship to the other members of the SLA being held for state trial in Los Angeles. She understood her relationship to the judge and his role/function; and understood the role of the U. S. Government and the function of the U. S. Attorney as the prosecutor. She appreciated her relationship to her different defense counsel and their functioning, as well as her relationship to the psychiatrists and psychologist appointed by the Court in the instant case, and understood their role and their function. (Pollack, 10:4.)

Dr. Pollack also noted that the defendant, while initially becoming depressed and tearful when pressed to discuss her alleged involvement in the bank robbery, later was able to discuss these details "without significant depression" and "also appeared interested in discussing these details with her attorneys." (Pollack, 11:1.)

Dr. Pollack then offers the following conclusion:

. . . Miss Hearst's present ability to meaningfully, fully, and validly relate all of the emotionally disturbing events of her SLA period is still somewhat impaired, but nevertheless not fatally impaired with respect to the issue of mental competency to stand trial. . . . . . . (12:1.)

In my last interview [with the defendant] her distrust of authorities and of her attorneys had reduced markedly and had fallen far below a critical irrational level so that in this respect the defendant is mentally competent to stand trial. (13:1)

. . . [E]vidence of her passivity had significantly reduced and she had become more independently questioning and challenging. I therefore believe that Miss Hearst is sufficiently capable of making independent decisions about her legal problems so that she is mentally competent to stand trial . . . (14:1)

Even without psychiatric treatment, in my opinion, she will not decompensate or deteriorate emotionally under the stress of pretrial hearings, including the stress of cross-examination. . . [A]nd I believe [she] has sufficient psychological (ego) strength to provide a full picture of her SLA experiences to her attorneys. (14:2).

The report filed by Dr. West is in some respects at variance with those of his colleagues. It is voluminous in detail and concludes with the diagnosis that the defendant is suffering from "a traumatic neurosis with dissociative features" (West, 135:1), characterized by a spotty, hazy memory, rendering the defendant unable to provide a "full" and "completely" meaningful account of her experiences to her attorneys. (West, 84:3, 85:1.)

The accused's ability to relate pertinent facts, names, and events to defense counsel is, of course, an important ingredient in the preparation of a defense in a criminal action. But even if Dr. West is correct in his diagnosis that the defendant's memory is so impaired as to prevent her from relating the events of her life during the period of the alleged commission of the crime, such amnesia would not alone constitute sufficient grounds for a finding of incompetency to stand trial. *United States v. Borum*, 464 F.2d 896 (10th Cir. 1972). And see *Dye v. Cowan*, 472 F.2d 1206 (6th Cir. 1973); *United States v. Stevens*, 461 F.2d 317 (7th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972); *United States v. Sullivan*, 406 F.2d 180 (2d Cir. 1969); *United States v. Knohl*, 379 F.2d 427 (2d Cir.), *cert denied*, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). In *United States v. Doran*, 328 F.Supp. 1261 (S.D. N.Y.1971), the district court similarly rejected the defendant's claim that amnesia as to the events surrounding the al-

leged commission of the crime prevented him from assisting in his own defense and thereby rendered him incompetent to stand trial. In language that is applicable to the instant case, the court said:

> His memory is impaired, but not evidently inferior, even as impaired, to that of many defendants . . . . who are made to stand trial. He has emotional difficulties that would make him less than an ideal client. . . . But he appears to understand the nature of the charges against him, to remember enough and to communicate adequately to be put to trial. . . . . .

328 F.Supp. at 1262.

It should be noted also that the reports of Drs. Lunde and Pollack evidence their disagreement with Dr. West's diagnosis of an *involuntary* memory lapse on the part of the defendant. Dr. Pollack observes that the defendant, in her discussions with him, "was realistically cautious about describing those SLA experiences that might incriminate her" (Pollack, 8:1), and that "most of her present reluctance to discuss these events is now consciously controlled." (12:1) Dr. Lunde cautiously refrains from labeling any memory impairment voluntary and is careful to assert that it was the *defendant* who *stated* that her memory of events subsequent to her kidnapping by the SLA was "largely blank" (Lunde, 4:1), or "incomplete at the present time." (5:3)

> Dr. West allows that the defendant is capable of understanding that her defense requires her to provide counsel with a complete, factual, and historically sequential account of her experiences from the time of her kidnapping on 4 February 1974 to the time of her arrest on 18 September 1975. She is also capable of understanding that she must communicate to counsel the mental and emotional impact upon her of the various stresses to which she was subjected as a victim of kidnapping and subsequently as a captive. (West, 84:2.)

He concludes, however, that "despite her rational comprehension of these necessi-

ties, Patricia Hearst is not at the present time capable of carrying them out." (84:3.) The difficulty which the Court finds in this analysis is that while Dr. West's own report repeats in lengthy detail the defendant's account of the admittedly traumatic events following her kidnapping and up to the time of the bank robbery—and thereby evidences the defendant's ability to recall specific details of her experiences—it nevertheless ascribes her confusion as to names and events *following* that period to an emotional debility. It is hard to reconcile—and Dr. West does not convincingly explain—the apparently selective quality of the defendant's memory during this period.

The foregoing account of the psychiatric reports and conclusions bespeaks the complexity and difficulty in resolution of the issue of this defendant's competency *vel non* to stand trial. In reaching the conclusion that the defendant is presently competent, the Court does not mean to intimate that she is not in need of psychiatric therapy. The Court has already assented to the wishes of the defense that Ms. Hearst be allowed to engage in consultation with a psychiatrist of her own choosing for therapeutic purposes. The Court encourages the commencement and continuation of such treatment. The interest of the defendant in achieving the *optimal* level of psychological well-being and, hence, participatory ability, however, must be balanced against the interest in expediting the criminal process. A finding of competency to stand trial requires that the proceedings go forward.

█ The danger exists, of course, that forcing a defendant to trial who is not able for medical or psychological reasons to aid counsel in the preparation of his or her defense will have the effect of depriving the defendant of the effective assistance of counsel required by the Sixth Amendment. The question whether the circumstances of a given case have or will prevent a criminal defendant from being rendered the effective assistance of counsel is a question of fact

to be determined by the court in the exercise of its discretion. *Barber v. Nelson*, 451 F.2d 1017, 1019 (9th Cir. 1971); *United States v. Millican*, 414 F.2d 811 (5th Cir. 1969). Because the Court has concluded that the defendant is presently competent to stand trial, there is no cause to believe that she will not be able to assist in her own defense and be deprived of the right to effective assistance of counsel.

During the preparation of this memorandum the defendant has presented for filing and has filed a "Memorandum of Law for the Defendant's Motion for a Continuance", and the plaintiff has filed in response a document entitled "Government's Motion to Strike Defendant's Motion for Continuance." The defendant's motion is untimely, but it raises two questions, in the alternative: (1) a motion to continue, and (2) a motion to inspect the government's files in the event the motion to continue is denied. Because of the present untimeliness of both defense motions they will be denied without prejudice at this time, and may be renewed upon notice by the defendant.

IT IS ORDERED that:

1) Defendant's motion to continue, or, in the alternative, to inspect the government's files be, and the same is, hereby denied without prejudice;

2) The defendant is declared and found competent to stand trial; and

3) The case is set down for the plea of the defendant on November 10, 1975, at 2:00 o'clock p. m. of said day, and to be set for trial.