## UNITED STATES of America

v.

### Horace Edward HOLLIS, Appellant.

### No. 76–2514.

United States Court of Appeals, Third Circuit.

Originally Submitted May 17, 1977.

Resubmitted Oct. 7, 1977.

Decided Dec. 29, 1977.

Richard A. Zappa, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for appellant.

James W. Garvin, Jr., U. S. Atty., Wilmington, Del., by John H. McDonald, Asst. U. S. Atty., for appellee.

Before ADAMS, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In this case, the appellant, Horace Hollis, raised the issue of his mental competency at arraignment, but no hearing was held to evaluate that claim. He then pleaded guilty. After being incarcerated, Hollis filed a petition for habeas corpus, claiming he was incompetent at the time of his plea, and therefore should be permitted to withdraw it. At the habeas hearing, the trial judge placed on petitioner the burden of proving incompetency at the time of the guilty plea, and denied relief. On this appeal, the question is whether the trial court erred in allocating the burden of proof.

I.

Hollis was arrested on September 3, 1974, and was indicted a week later for transporting a firearm in interstate commerce in violation of 18 U.S.C. § 922(g)(1).[1] At his initial appearance before the district judge, the defendant, then unrepresented by counsel, moved for a psychiatric examination. On that occasion, Hollis indicated that he had been under the care of a psychiatrist during a prior period of incarceration, and that after he was paroled in January of 1974, he unsuccessfully had sought further psychiatric treatment.

The trial judge denied Hollis' motion, but ordered the Assistant United States Attorney to advise defense counsel, when appointed, of Hollis' request. The prosecutor later complied with the court's instructions.

On September 25, 1974, with appointed counsel present, Hollis pleaded not guilty to the charge against him. On April 4, 1975, again in the presence of appointed counsel, Hollis withdrew his original plea and entered a plea of guilty. He was then sentenced to a two-year term of imprisonment. Neither Hollis nor his counsel made a request for a mental examination at the time of sentencing.

Eleven months later, Hollis filed a *pro se* motion pursuant to 28 U.S.C. § 2255, seeking an order to vacate his sentence on the ground, *inter alia*, that the district court had erred in failing to grant his request—at his initial appearance before the court—for a mental examination. In response to the § 2255 petition, the court-appointed counsel for Hollis ordered Dr. Robert Patton to complete a psychiatric examination of Hollis.

On October 8, 1976, a hearing was held regarding Hollis' claim of incompetence. Evidence was offered that, at the time of his guilty plea, Hollis may have experienced an organic brain disfunction causing temporal lobe seizures. Hollis presented three

1. The statute reads:

(g) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport any firearm or ammunition in interstate or foreign commerce.

witnesses. Frank Grant, an FBI agent, testified that at the time of his arrest, Hollis had been fearful and quite upset. Andrea Williams, Hollis' sister, indicated that the petitioner had been incoherent and depressed during April of 1975, when the guilty plea was entered. Finally, Hollis himself testified with regard to his initial request for a mental examination and his prior treatment for mental disorders. The evidence adduced by the petitioner indicated that he had a history of an abnormal electroencephalogram, which suggested the possibility of temporal lobe seizures; that at the age of eight Hollis had suffered from measles-encephalitis, which resulted in brain-cell damage; that an EEG performed in 1949 was grossly abnormal; and that medical records interpreting this EEG, which were introduced at the hearing, demonstrated that Hollis had been subject to "petit mal" type of seizures.

The government produced two witnesses: Robert Stewart, Esquire, who had been appointed counsel for Hollis at the time of the guilty plea, and Dr. Patton. Mr. Stewart testified that he believed that Hollis had understood the nature of the guilty plea negotiations, of the charges against him, and of the consequences of his plea. Dr. Patton, who had conducted two interviews with the petitioner, testified that Hollis was then suffering from severe depression and a serious personality disorder of a sociopathic type which necessitated regular and intense psychiatric care. Additionally, Dr. Patton stated that because the recent EEG's were normal, in all probability Hollis had not been subject to seizures at the time of the guilty plea. The doctor expressed the view that Hollis probably had been mentally competent when the guilty plea was entered.

In an opinion dated November 4, 1976, the district court denied Hollis' motion to vacate the sentence, stating that Hollis had failed to discharge his burden of proving incompetency at the time of the guilty plea. After referring to the standard set out in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the trial judge determined that Hollis had "suffi-

cient present ability to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." In reaching its conclusion, the trial court relied on statements by Hollis at the plea hearing which the judge construed as indicating that Hollis had understood the substance and implications of the plea agreement. The judge also noted that he relied upon Mr. Stewart's testimony that, as appointed counsel for Hollis, he believed that Hollis had grasped the nature of his plea. And the district court emphasized Dr. Patton's testimony that Hollis' recent normal EEG's suggested that he had not been subject to seizures at the time of his guilty plea.

Hollis filed a timely appeal from the trial judge's order. While the appeal was pending, Hollis, on April 11, 1977, moved this Court to remand the case to the district court and to direct it to reconsider the denial of Hollis' motion in light of newly discovered evidence, namely, two abnormal EEG's taken after the notice of appeal had been filed. In an order dated May 25, 1977, this Court granted Hollis' motion for a remand, but retained jurisdiction of the appeal.

On July 22, 1977, a supplemental hearing was conducted by the trial court at which two witnesses were presented: Dr. Patton for Hollis, and Dr. William Jeffreys, a neurologist, for the government. Dr. Patton testified that, in light of the recent abnormal EEG's, there was an increased probability that Hollis had been subject to temporal lobe seizures at the time of his guilty plea. However, Dr. Patton could not state whether Hollis actually had suffered such a seizure at that time.

Dr. Jeffreys testified that a person with temporal lobe seizures could not engage in goal-directed activity such as entering a guilty plea. He also stated that a reasonably prudent layman is capable of observing whether such seizures are, in fact, taking place.

In its second opinion, the district court concluded that Hollis may have been subject to temporal lobe seizures at the "general time" that he entered his plea of guilty. However, after declaring that the burden of proving mental incompetency was on the petitioner,[2] the court determined that Hollis had failed to carry his burden of showing that he had been in the throes of such a seizure on the specific occasion of the guilty plea. The court noted that Dr. Patton was unable to state whether Hollis had experienced a seizure at that time. Also, the trial court recounted that Dr. Jeffreys had testified that such a seizure would be observable to a layman. The court then relied upon the observations made by Mr. Stewart and by the court itself when Hollis entered his plea. After concluding that no seizures by Hollis had been apparent to the trial judge or to Stewart, the district court denied Hollis' motion.[3]

## II.

Since we retained jurisdiction over the case when the motion for remand was granted, we now address the central arguments set forth by Hollis relating to the validity of his guilty plea.

Hollis contends, first, that substantial evidence produced at the competency hearing on July 22, 1977, established that he had undergone temporal lobe seizures during April of 1975, when he entered his guilty plea, and thus was mentally incompetent at that time. He urges that a contrary determination is clearly erroneous. In addition, Hollis maintains that on the basis of all of the evidence before it, the trial court could not legally determine retrospectively that Hollis was mentally competent when he pleaded guilty.

■ After reviewing the record and the district court's opinion, we are of the view that the district court could determine in this case that Hollis was mentally competent at the time his guilty plea was entered. Such a determination would not be clearly erroneous in light of the evidence that has been presented. Further, the difficulties of retrospectively ascertaining an accused's competence to stand trial, which may pose serious problems in some situations, are not so significant here that such an after-the-fact conclusion would be untenable or impossible to reach.[4]

Nevertheless, we cannot affirm the judgment of the district court, for we conclude that the court erred in placing on Hollis the burden of proving lack of competence.[5] It

**2.** It appears from the district court's opinion that the parties had stipulated that the petitioner carried the burden of proof in this case.

**3.** It is not completely clear from the district court's opinion whether the placement of the burden of proof on the petitioner actually determined the result reached by the trial judge. Initially, the trial judge stated, "I conclude therefore, from both the observations of the Court and Mr. Hollis' attorney, that no seizures were experienced, and thus that the defendant has failed to meet his burden of proving that he was rendered incompetent." However, in summation, the trial judge stated, "Because both Dr. Patton and Dr. Jeffreys would include the observations of an attorney and a judge in their opinions, and furthermore, because Dr. Jeffreys excluded the possibility that a temporal lobe seizure could have gone unnoticed, this Court concludes that the observations of Mr. Hollis' former attorney, coupled with the defendant's responses to the judge's interrogation (and the judge's conclusions based upon that interrogation), form a sufficient record upon which to

base its conclusion that the defendant was competent when he offered his plea."

**4.** *See United States v. Makris,* 535 F.2d 899, 904 (5th Cir. 1976), where it is stated that the passage of time alone is not an insurmountable obstacle to retrospective determination of competency. *See also United States v. DiGilio,* 538 F.2d 972, 989 (3d Cir. 1976) ("The district court is in the best position to determine whether it can, either on the present record or with supplementary testimony, make a retrospective determination of DiGilio's competency throughout his trial."). *Cf. Drope v. Missouri,* 420 U.S. 162, 183, 95 S.Ct. 896, 989, 43 L.Ed.2d 103 (1975).

**5.** The district court cited *Martin v. United States,* 463 F.2d 220 (3d Cir. 1972), for the proposition that in a § 2255 proceeding the burden of proving incompetence rests upon the moving party. In *Martin,* the appeal from a denial of a motion to vacate sentence pursuant to 28 U.S.C. § 2255 was predicated on the grounds of mental incompetence resulting from drug use. This Court affirmed the judgment of

may well be that upon remand the district court might determine that, without imposing the burden of proof on the accused, Hollis cannot be said to have been mentally incompetent at the time he entered his plea of guilty. However, any such conclusion should be reached without placing the burden of proof upon the petitioner.

■ At the outset of our analysis, it should be noted that there are two competing jurisprudential postulates pertinent to the resolution of the present case. First, there is the notion, basic to our adversary system, that a defendant should not be tried for a crime if he is mentally incompetent. In order to promote the vindication of that principle, this Court, in *United States v. DiGilio,* 538 F.2d 972 (3d Cir. 1976), held that the burden of proving incompetency should not be placed upon the defendant, but instead the burden of proving competency should rest upon the government.[6] Second, there is the policy, limited to a *habeas* petitioner—which Hollis is—that one who seeks collateral relief normally must bear the burden of proving that his conviction was illegal.

Consequently, we are faced, on the one hand, with the precept that in a direct criminal appeal raising the issue of mental incompetency, the accused *does not* bear the burden of proof. Yet, on the other hand, the traditional doctrine with respect to *habeas* petitioners, in general, is that they *do* carry the burden of proof. In order to resolve the apparent tension between these two propositions in the context of this appeal, we must look to their underlying rationales in order to determine their applicability to the factual configuration present here.

■ The first guiding principle, then, is that an individual whose mental condition is such that he cannot understand the nature of the proceedings in which he is involved, and cannot assist in the preparation of his defense, may not be subjected to a trial.[7] *See Drope v. Missouri,* 420 U.S. 162, 171–172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *United States v. Masthers,* 176 U.S.App. D.C. 242, 246, 539 F.2d 721, 725 (1976). This concept has roots that run deep in the history of the common law. As Blackstone wrote, one who becomes "mad" subsequent to the commission of a crime should not be arraigned for it "because he is not able to plead to it with that advice and caution that he ought." And such a person should

---

the district court that the defendant was competent. However, the fact pattern in *Martin* varied considerably from the case at hand. Martin's counsel, at a bail hearing, had specifically urged that the defendant was no longer addicted to narcotics. More importantly, at the competency hearing itself, the defendant and his attorney indicated that no evidence would be offered on defendant's behalf to show mental incompetency, because of the use of drugs, at the time of trial or sentencing. Thus, unlike Hollis, the petitioner in *Martin,* while raising the issue of incompetence, presented no evidence whatsoever in support of the allegation of incompetency.

6. The meaning of the phrase, burden of proof, has been clouded by "an unfortunate confusion of terminology," which has involved a distinction, attributed to J. Thayer, *A Preliminary Treatise on Evidence at the Common Law,* 355–359 (1898), between the burden of persuasion and the burden of production. *See* Underwood, *The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases,* 86 *Yale L.J.* 1299, 1300 n. 3 (1977). The burden of persuasion includes the burden of establishing before a fact-finder that a given proposition is correct. The burden of production deals with the burden of coming forward with enough evidence to raise a genuine issue of fact and thus, when there is a jury, to justify submitting the question to the jury. In this opinion, the term "burden of proof" is used, as it apparently was by the district court, as referring to the burden of persuasion.

7. The governing test for determining mental incompetence under 18 U.S.C. § 4244 is stated in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) as:

. . . whether (the defendant) has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.

The standard for determining a defendant's competency to stand trial should not be confused with the criteria for determining a defendant's sanity at the time of the criminal act in question. *See Martin v. Estelle,* 546 F.2d 177, 186 and n. 5 (5th Cir. 1977); *United States v. Mercado,* 469 F.2d 1148, 1152 (2d Cir. 1972).

not be brought to trial, "for how can he make his defense?" 4 W. Blackstone, *Commentaries* 24, *quoted in Drope v. Missouri, supra,* 420 U.S. at 171, 95 S.Ct. 896.

Aside from being of historical importance, the prohibition against trying a mentally incompetent defendant is also "fundamental to an adversary system of justice." *Drope v. Missouri,* 420 U.S. at 172, 95 S.Ct. at 904. Moreover, the failure to observe procedures that protect a defendant's right not to be tried or convicted while incompetent to stand trial gives rise to a deprivation of his due process right to a fair trial. *See Pate v. Robinson,* 383 U.S. 375, 385–386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Congress underscored the significance of mental competency as a prerequisite to a fair and humane criminal trial by its enactment of 18 U.S.C. § 4244, the statute applicable here. § 4244 requires an investigation by a psychiatrist of the mental competence of an accused when there is "reasonable cause" to believe that he is "presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense . . . ." In addition, § 4244 provides that "[i]f the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted . . . and make a finding with respect thereto."

In view of the fundamental nature of the concept that an incompetent defendant should not be brought to trial, this Court in *DiGilio, supra,* held that in a proceeding pursuant to § 4244, no burden of proof rests on a defendant to demonstrate his own incompetency.[8] The Court's reasoning in *DiGilio* appears to be bottomed

primarily on two principles: first, in order for a criminal proceeding to be fair, our system requires that a defendant be competent; and second, it would be both basically unfair as well as contradictory to say that a defendant who claims he is incompetent should be presumed to have the mental capacity to show that he in fact is incompetent. It simply cannot be assumed, the *DiGilio* Court noted, that a defendant who may be incompetent possesses "sufficient intelligence that he will be able to adduce evidence of his incompetency which might otherwise be within his grasp." 538 F.2d at 988. Since there is an inconsistency in a position which expects the defendant to prove his own incompetency, and because the right not to stand trial if one is incompetent is of due process dimensions, this Court concluded that "there is no room for a rule of law placing any burden of proof on the defendant" regarding the issue of his incompetency. *Id.*

If Hollis' case were before this Court on a direct appeal, we would, of course, follow *DiGilio,* which requires that the burden of proof be placed on the prosecution. However, because this appeal is grounded on a *habeas* petition, we must consider whether the traditional policy of requiring a *habeas* petitioner to prove that his conviction and confinement are illegal is applicable here.

As previously indicated, in *habeas* cases the general rule is that the petitioner himself bears the burden of proving that his conviction is illegal. *See, e. g., Darr v. Burford,* 339 U.S. 200, 218, 70 S.Ct. 587, 597, 94 L.Ed. 761 (1950); *Walker v. Johnston,* 312 U.S. 275, 286–287, 61 S.Ct. 574, 85 L.Ed. 830 (1941); *Johnson v. Zerbst,* 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). *See also* Developments, *Federal Habeas Corpus,* 83 *Harv.L.Rev.* 1038, 1140–1141, 1143 n. 125 (1970). The rationale for this precept is that criminal proceedings usually

---

8. *See also United States v. Makris,* 535 F.2d 899, 906 (5th Cir. 1976) ("There can be no question that in federal criminal cases the government has the burden of proving defendant competent to stand trial at the § 4244 hearing or its *nunc pro tunc* substitute."); *People v. McCullum,* 66 Ill.2d 306, 5 Ill.Dec. 836, 362 N.E.2d 307, 310–311 (Ill.1977) ("Fundamental fairness dictates that, where a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the state, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial.")

may be presumed to have been proper and legal and, consequently, a *habeas* petitioner must show that such a presumption is incorrect in his own case. For example, as the Court wrote in *Darr v. Burford, supra,* in the context of a *habeas* petition brought by a state prisoner:

A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused.

■ The basis of the presumption regarding the validity of trial court proceedings apparently is that, if there were no such presumption, there would be no finality to criminal cases. In the area of *habeas* jurisprudence, there is definite awareness of the need ultimately to bring criminal proceedings to an end. *See, e. g.,* Bator, *Finality In Criminal Law And Federal Habeas Corpus For State Prisoners, 76 Harv.L. Rev.* 441, 442–444 (1963).[9] As Justice Harlan has written, "(b)oth the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation. . . ." *Sanders v. United States,* 373 U.S. 1, 24–25, 83 S.Ct. 1068,

1082, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting).

It should be emphasized that a critical assumption of the argument for finality with respect to *habeas* petitions is that the contested issue has already been litigated before the trial court.[10] Where a matter has been litigated once, to have another proceeding is to run a risk of needlessly overburdening the judicial system.[11]

■ Yet, the rationales for finality and for the presumption of the validity of trial court proceedings under collateral attack would appear to have little bearing on the facts of this case. Hollis initially raised the issue of his mental incompetency at his arraignment, but no hearing on the matter was held. There thus was no fact-finding or hearing on the question of Hollis' competency prior to conviction, even though Hollis specifically raised the point in his first appearance before the Court.[12]

As a result, the presumption of the regularity of the proceedings in the trial court *cannot* apply in this situation, for there were no pre-conviction proceedings on the issue of incompetency as to which such a presumption could operate. Moreover, Hollis cannot be said to be seeking to relitigate an issue previously adjudicated by the trial court. Nor may he be seen as raising for the first time in a collateral attack the issue of his incompetency to stand trial.

Since the policies underlying the rule of placing the burden of proof on *habeas* peti-

---

**9.** The policy of finality in *habeas* cases is buttressed by considerations of comity and federalism when a defendant tried in state court attacks his conviction in federal court. However, since Hollis was tried in federal court, such considerations are not applicable here.

**10.** See *Mackey v. United States,* 401 U.S. 667, 690–691, 91 S.Ct. 1160, 1179, 28 L.Ed.2d 404 (1971) (Harlan, J.), where it is written: "No one . . . is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation *on issues already resolved.*" (emphasis added).

**11.** Of course, the principle of finality is by no means the only consideration pertinent to an analysis of *habeas corpus,* although it is the one that appears most important to the analy-

sis of this case. As the Supreme Court wrote in *Blackledge v. Allison,* 431 U.S. 63, 72, 97 S.Ct. 1621, 1628, 52 L.Ed.2d 136 (1977): " . . . arrayed against the interest of finality is the very purpose of the writ of habeas corpus—to safeguard a person's freedom from detention in violation of constitutional guarantees."

**12.** It cannot be said that, in these circumstances, Hollis has in effect waived his right to challenge the validity of his guilty plea. Moreover, as the Supreme Court wrote in *Pate v. Robinson,* 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815 (1966):

[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial.

tioners is not applicable to this situation, it is appropriate here to fashion an exception to the guiding principle regarding the placement of the burden of proof in *habeas* cases. *Cf. United States ex rel. McCloud v. Rundle,* 402 F.2d 853, 857 (3d Cir. 1968). Thus, because of the inconsistency of expecting a defendant like Hollis who asserts that he is incompetent to demonstrate that he does suffer from mental incapacity, and since the issue was raised but was not litigated prior to conviction through no fault of the accused, it would not be appropriate for the burden of proof to be placed upon Hollis.

Our conclusion is congruent with the intent of Congress as expressed in § 4244. To put the burden of proof on a *habeas* petitioner such as Hollis, who raised the issue of his incompetency before pleading guilty but was not afforded an opportunity to establish incompetency prior to conviction, would appear to frustrate the purpose of § 4244, which is to guarantee that an incompetent defendant not be required to stand trial. *See United States v. Muncaster,* 345 F.Supp. 970, 973–974 (M.D.Ala. 1972), *aff'd,* 472 F.2d 1407, *cert. denied,* 412 U.S. 963, 93 S.Ct. 3021, 37 L.Ed.2d 1011 (1973). In the absence of any explicit indication by Congress that a petitioner such as Hollis should carry the burden of proof, we decline to hold that he does.[13]

### III.

In sum, in this case it was error to place the burden of proving incompetency on Hollis.[14] Accordingly, the judgment of the district court will be vacated and the case remanded for proceedings consistent with this opinion.

**13.** Hollis' appeal also involves the special considerations surrounding the issue of the voluntariness of his guilty plea, as protected by Rule 11, Fed.R.Crim.P.

The Supreme Court in *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), emphasized the requirement that a guilty plea be voluntary and knowing. Indeed, it is the aim of the colloquy between an accused and the judge at the time a defendant pleads guilty, the Court noted, to determine that the plea in fact is voluntary. Moreover, as the Court said, if the safeguards of Rule 11 are followed rigorously by a trial judge, a complete record of the factors weighed by the court in making its determination of voluntariness will be preserved, and the finality of guilty pleas will thus be protected. See *McCarthy, id.,* 394 U.S. at 465, 89 S.Ct. 1166.

To say that it is essential that a guilty plea be voluntary is to presuppose that a defendant must be in control of his mental faculties and capable of an act of volition. Thus where, as here, the issue of competency is raised in a case involving a Rule 11 hearing, the strong policy in favor of assuring that a guilty plea is voluntary is immediately implicated.

It is our view that such a policy would be thwarted by distinguishing *in this case* between those who, on the ground of incompetence, attack their convictions on a direct appeal, and those like Hollis who do so collaterally by way of a *habeas* petition. *Cf. United States ex rel. Grays v. Rundle,* 428 F.2d 1401, 1404 (3d Cir. 1970), which held that the district court did not err in placing the burden of proof on the *habeas* petitioner to show that his guilty plea was not an intelligent, voluntary act. *Grays* did not involve a claim of mental incompetency nor had the question of competent counsel been raised before the trial court. Thus, *Grays* is distinguishable from the present action.

**14.** The exception adduced here to the general rule that a *habeas* petitioner bears the burden of proof is designedly a limited one confined to the facts of this case. The reasoning that is adopted is not contrary to that in cases holding that, in different factual situations, the general rule in *habeas* cases regarding the burden of proof should be followed.

For example, in *Bruce v. Estelle,* 536 F.2d 1051 (5th Cir. 1976), where the court held that a *habeas* petitioner has a burden of proving mental incompetency, the issue of competency had not been raised by the defense or by the court during the trial. Consequently, in *Bruce,* there was no preconviction request by the defendant, such as there was in this case, regarding an investigation into the matter of the defendant's competency. *See also Conner v. Wingo,* 429 F.2d 630, 632 (6th Cir. 1970), where there was no indication that, prior to conviction, the defendant had moved for a hearing under § 4244 or that he had raised the defense of mental incompetency.

Moreover, the decision in this case does not preclude placing the burden of production on the defendant. *See United States v. DiGilio,* 538 F.2d 972, 988 n. 20 (3d Cir. 1976). *See also* fn. 6, *supra.*