**Robert Lee STOKES, Petitioner,**

v.

**UNITED STATES of America, Defendant.**

**No. H 77–C–407.**

United States District Court, N. D. Indiana, South Bend Division.

April 29, 1982.

Gary K. Matthews, Hammond, Ind., for petitioner.

Douglas B. Altman, Asst. U. S. Atty., Hammond, Ind., for the U. S.

## ORDER AND MEMORANDUM

GRANT, Senior District Judge.

This habeas corpus proceeding comes to this Court for the third time after two previous appearances before the Court of Appeals for the Seventh Circuit, 614 F.2d 775; 652 F.2d 1. The history of this case is a long and troubled one which poses extremely difficult but highly significant legal and factual questions. It concerns the claim of a federal prisoner that he was incompetent to stand trial back in 1975. For the sake of completeness, the Court believes it would be valuable to initially trace all of the events leading up to this proceeding.

### Background

Stokes was convicted of conspiracy to distribute narcotics in violation of 21 U.S.C.

§ 846 in this district court in September, 1975, and sentenced to 15 years imprisonment with 3 years special parole. The conviction was affirmed without an opinion by the United States Court of Appeals for the Seventh Circuit on June 26, 1976. 549 F.2d 804 (7th Cir.), *cert. denied*, 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977). On November 28, 1977, over two years after his conviction, Stokes filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2255 alleging, *inter alia*, that he had been incompetent at the time of his trial.[1] The basis for his request for habeas relief on the issue of competency consisted primarily of his prior commitment to the Norman Beatty Hospital from April 11, 1967 until May 21, 1969.[2] Stokes claimed he never understood why he had been released in 1969, and further that he should not have been released at that time. In support of that contention, he claimed that hospital staff members had expressed reservations about his release. His most significant claim in the petition was that he had informed trial counsel that he had been insane at the time of the federal offense, and that he was incompetent to stand trial. Further, counsel never informed the Court of Stokes' past medical history nor did he raise the issues of incompetency or insanity.

On December 5, 1977, the Court ordered the Government to respond by no later than February 1, 1978.[3] No response was filed by that date. Stokes then proceeded to file a "Motion to Enforce Show Cause Order" on February 13, 1978, claiming that he was entitled to habeas corpus relief as a result of the Government's noncompliance with the Court's Order. On April 25, 1978, Stokes filed a motion for summary judgment on the same ground. In a letter dated July 3, 1978, and filed on July 11, 1978, Stokes petitioned the Clerk of the Court to enter a default judgment against the Government. No action was taken by the Government nor by the Court in response to any of these three filings by Stokes.

On January 5, 1979, the Government filed its reasons for failing to comply with the Court's December 5, 1977 Order.[4] On January 8, 1979, the Government's response was at last filed. It argued the competency issue as follows:

> Nothing in the record indicates that the Petitioner was unable to consult with his attorney. To the contrary, a review of the record shows that he was quite capable of such consultation. For example, the Government notes the statement of the Petitioner's counsel on page 1988 of the transcript that he had reviewed an important tactical matter with the Petitioner at length and found him in full accord. On pages 2111–2112 of the transcript, his counsel states that the Petitioner decided not to take the stand with a full understanding of the fact that it was his decision whether or not to do so. His counsel expressed approval of the Petitioner's decision. In addition, the Government notes that the Petitioner did take the stand briefly on the limited question of voluntariness of an interview

---

1. Stokes alleged the following constitutional errors in addition to his incompetency claim: (1) rejection by the trial judge of a tendered voir dire question concerning any prejudice a juror might harbor against a defendant if it is shown that he committed other crimes; (2) discrimination in the selection of the voir dire jury; (3) preclusion of two defense witnesses; (4) admission by the Government of knowingly perjured testimony; and (5) ineffective assistance of counsel.

2. Stokes had been found "guilty by reason of insanity" in a state criminal proceeding. The state trial judge then found that there was a "high probability of recurrence of insanity" and sentenced him "to be committed to the Division

of Maximum Security of Dr. Norman M. Beatty Memorial Hospital, until duly discharged according to law."

3. On December 27, 1977, Stokes moved to supplement his original petition to include two additional grounds: (1) the grand jury which issued his indictment had been improperly convened; and (2) the trial judge improperly considered a prior conviction at the time of sentencing.

4. The excuses proferred by the Government were without any merit whatsoever. The Government was fortunate the trial court permitted their response to be filed at all.

(Tr., pp. 1386–1393). He was able to answer all questions lucidly, without any apparent difficulties. Finally, the protrait [sic] painted of the Petitioner by his counsel in his defense was of a sociable, well-adjusted individual who took his friends' mother shopping and their father fishing and to baseball games. (Tr., pp. 2329–2330). This record conclusively demonstrates that the Petitioner was competent to stand trial. Consequently, the Government submits the Court should dispose of his claim of incompetency without a hearing. *United States v. Collier*, 399 F.2d 705 (7th Cir., 1968).

On January 12, 1979, the district court, without any hearing, rejected Stokes' claim that he was incompetent at the time of trial. In his Memorandum, Judge Sharp adopted verbatim the above quoted argument of the Government.[5] On February 26, 1979, Stokes filed a notice of appeal. In an unpublished order filed on December 28, 1979, 614 F.2d 775 (7th Cir. 1979), the Court of Appeals reversed the decision of this Court on the ground that the record, the sole material relied upon by Judge Sharp, did "not conclusively establish that [Stokes'] allegations are without merit." Mem.Op. at 4. The case was remanded and the district court "directed to order the production of relevant records and to consider the advisability of permitting further development of the relevant facts by discovery or otherwise." *Id.* at 5.

On January 18, 1980, the Government filed a motion requesting that a psychiatric examination be performed upon Stokes.[6] The motion was granted at a hearing held on January 31, 1980, and Stokes was transferred to the United States Medical Center for Federal Prisoners at Springfield, Missouri. In compliance with the mandate of the Court of Appeals, the district court, on February 11, 1980, ordered the Superintendent of the Logansport State Hospital to deliver as expeditiously as possible a copy of all records in his custody relating to the confinement, treatment and release of Robert Stokes at Beatty Memorial Hospital between 1967–69. The records were received by the Clerk's Office on February 19, 1980, and immediately forwarded to Springfield, along with the trial transcript. The Springfield medical report was filed with the Court on March 24, 1980.

A hearing was held on May 20, 1980. At that time, Stokes (appearing *pro se*) was informed that a further hearing would be held on June 4, 1980, at which time he would be given the opportunity to present evidence supporting his claim that he was incompetent to stand trial. Stokes' motion for the appointment of counsel was granted.

On June 2, 1980, Gary Matthews, Stokes' appointed counsel, filed a motion for a continuance. The motion was granted that same day and the competency hearing was rescheduled for July 10, 1980. After reviewing the Springfield report, the Beatty records and the case in whole, Stokes' counsel filed on July 9, 1980, a motion for the employment of a psychiatrist as well as another continuance.

The hearing for July 10, 1980, proceeded forward as scheduled. In a Memorandum and Order filed on July 18, 1980, Judge Sharp held that Stokes had been competent to stand trial in 1975. The motions for the appointment of a psychiatrist and a contin-

---

**5.** The court in fact adopted the Government's entire Memorandum.

**6.** In its motion, the Government stated that it "believes there was a substantial question as to ROBERT LEE STOKES' competency to stand trial...." Stokes presently argues that this statement constitutes some type of admission that the Government knew throughout this case that Stokes showed signs of being incompetent and that it should have requested a psychiatric examination be performed before trial. The Court finds this argument unpersuasive. The language used in the motion is "boilerplate" language used in many § 4244 motions. Further, the motion would have never been filed had not the Court of Appeals reversed this court. Thus, to impute knowledge to the Government based upon the language of its motion would be unjustified and unfair.

uance were also denied.[7] In finding Stokes to have been competent, Judge Sharp placed considerable reliance upon his own observations of Stokes during the trial and the representations of competency made by Stokes' trial attorney.

On July 30, 1980, Stokes again filed a notice of appeal which raised the following points:

1. Knowledge in part of the U. S. Attorney of history of mental incompetency [sic] and their failure to advise Court of same purusuant [sic] to 18 U.S.C. section 4244.

2. Delay in mental competency evaluation of five years as denial of due process.

3. Delay in mental competency evaluation and hearing thereon resulting in loss of witnesses, family doctor, etc.

4. Denial by trial judge of Motion to Continue and Motion to employ psychiatrist was denial of 7th Circuit's purpose on remand.

In an opinion filed on June 18, 1981, the Court of Appeals again reversed and remanded for an evidentiary hearing. 652 F.2d 1 (7th Cir. 1981). The appellate court was deeply troubled by the nature of the hearing which was conducted.

The rules promulgated under Section 2255 permit the court to consider sworn affidavits and other methods of discovery. *See e.g.* 28 U.S.C. following § 2255, Rules 5–7. Once a factual dispute has been found to exist, however, an adversary hearing must be held, with counsel. *Id.* at Rule 8. Judge Sharp, however, followed neither route. Instead, Judge Sharp engaged in an unsworn colloquy with Stokes' trial counsel (who did not represent him for this mo-

tion) to determine why counsel did not raise the competency issue. Stokes was not represented by counsel at the time of the examination, nor was he allowed to cross-examine his former counsel. Nevertheless, the court heavily relied on the lawyer's representations in making his decision.[1]

This *ex parte* hearing did not satisfy section 2255's requirement of an adversary judicial hearing when a factual dispute exists. *United States v. Underwood,* 577 F.2d 157 (1st Cir. 1978), is on all fours with the present case. There the judge relied on an in-chambers conference with the prosecutor and Underwood's trial counsel. We agree with the First Circuit's appraisal that the unsworn representations of counsel are not a substitute for evidence. *Id.* at 159.

[1] In his written memorandum, Judge Sharp stated that he relied on "an extensive interview of the defendant's trial counsel" who "unequivocally thought his client to be competent." *Stokes v. United States,* No. H 77–407, memorandum and order (N.D.Ind. July 18, 1980). He considered the attorney's testimony to be of equal weight with his own observations of the petitioner and a court-ordered examination of Stokes.

In his oral ruling, Judge Sharp said his 30-minute interview of trial counsel was "highly significant." The judge said he was "very impressed" with counsel's remark that "he did not feel that even there was the slightest chance that there was an incompetency issue to be raised, so he didn't raise it." Transcript of Proceedings, No. H 77–407 (N.D.Ind. July 10, 1980) at 44.

652 F.2d at 1–2.

On August 14, 1981, Stokes' petition for rehearing before the Court of Appeals was denied. Judge Swygert added the following to the denial order:

With some reluctance, I join in voting to deny petitioner-appellant's motion for rehearing.

7. Judge Sharp explained his decision as follows:

Petitioner once again asked for a continuance of the hearing in order that he may employ a psychiatrist, at government expense, to attempt to rebut the findings of competency by the medical staff at Springfield, Missouri. Petitioner makes no indication that any such rebuttal testimony would be forthcoming if a psychiatrist were to ex-

amine him again, but only that some evidence *might* be presented to rebut the findings of competency. This Court now DENIES such motion for a continuance. Having allowed witnesses to testify in favor of the petitioner at this hearing, this Court, from a complete review of the record finds absolutely no justification for hiring yet another psychiatrist for petitioner in the hope that some rebuttal evidence may be found.

I understand the need for hesitancy in laying down stringent guidelines for a district court to follow on remand. However, I am impelled to say that the appellant's request is not without merit. As pointed out in *Pate v. Robinson*, 383 U.S. 375, 387 [86 S.Ct. 836, 843, 15 L.Ed.2d 815] (1965) [sic], it is difficult to determine retrospectively an accused's competence to stand trial, and as I understand the import of *Dusky v. United States*, 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824] (1960); *Drope v. Missouri*, 420 U.S. 162 [95 S.Ct. 896, 43 L.Ed.2d 103] (1972), along with *Pate*, a *nunc pro tunc* determination is precluded.

For those reasons, I must assume the district court will, upon remand, have in mind the "instructions" given by the Sixth Circuit in *Pate v. Smith*, 637 F.2d 1068 (6th Cir. 1981).

Pursuant to the mandate of the Court of Appeals, able counsel was appointed for Stokes on August 26, 1981, and Stokes' renewed motion for the employment of a psychiatrist was granted on November 20, 1981. An evidentiary hearing was scheduled for and held on November 24, 1981, over the Government's motion for a continuance.

### I.

At the November 24 hearing, Stokes raised the issue of upon whom rests the burden of proof in this proceeding. Tr. 4. After listening to arguments from both sides, this Court held that the burden properly lay with the petitioner. Tr. 22. At the close of evidence, the Court requested that memorandums be filed by both sides, which would discuss the evidence and applicable law. The parties were also invited to brief the burden of proof question because of its potential importance. Although the Court had ruled orally at the outset of the hearing, it assured Stokes that an open mind would be kept until the memorandums had been studied and the issue researched and examined. Tr. 162–63. Keeping its word, the Court will first address the burden of proof question.

■ It is the well accepted rule that in a habeas corpus proceeding, the burden is ordinarily upon the petitioner to establish by a preponderance of the evidence that he was mentally incompetent at the time of his trial. *See Owen v. United States*, 660 F.2d 696, 702 (6th Cir. 1981); *Martin v. Estelle*, 583 F.2d 1373, 1374 (5th Cir. 1978); *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 409 (1978); *Bruce v. Estelle*, 536 F.2d 1051 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977); *Martin v. United States*, 463 F.2d 220, 221 (3d Cir. 1972); *Johnston v. United States*, 292 F.2d 51, 53 (10th Cir. 1961); *Hayes v. United States*, 468 F.Supp. 179, 184–85 (S.D.Tex.1979). In *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979), the court stated:

When federal habeas relief is sought on grounds of incompetency-in-fact, the petitioner's initial burden is heavy. "Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner." *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973), subsequent opinion, 536 F.2d 1051 (5th Cir. 1976). Similarly, when habeas relief is sought on grounds of a violation of the *Pate* procedural right to a competency hearing, a petitioner shoulders the burden of proving that objective facts known to the trial court were sufficient to raise a bona fide doubt as to the defendant's competency. *Pedrero* [*v. Wainwright*, 5 Cir., 590 F.2d 1383], *supra*, at 1387. The emphasis in a *Pate* analysis is on what the trial court did in light of what it then knew. *Davis v. Alabama*, 545 F.2d 460, 464 (5th Cir. 1977).

An exception to this rule is found in *United States v. Hollis*, 569 F.2d 199 (3d Cir. 1977). In that case, the petitioner filed a *pro se* motion pursuant to 28 U.S.C. § 2255 approximately 11 months after he

had pleaded guilty to a charge of transporting a firearm in interstate commerce. In it, he alleged that the trial court erred in failing to grant his request for a mental examination. The district court placed upon Hollis the burden of proving incompetency at the time of his guilty plea. The Court of Appeals reversed, reasoning as follows:

> Yet, the rationales for finality and for the presumption of the validity of trial court proceedings under collateral attack would appear to have little bearing on the facts of this case. Hollis initially raised the issue of his mental incompetency at his arraignment, but no hearing on the matter was held. There thus was no fact-finding or hearing on the question of Hollis' competency prior to conviction, even though Hollis specifically raised the point in his first appearance before the Court.
>
> As a result, the presumption of the regularity of the proceedings in the trial court *cannot* apply in this situation, for there were no pre-conviction proceedings on the issue of incompetency as to which such a presumption could operate. Moreover, Hollis cannot be said to be seeking to relitigate an issue previously adjudicated by the trial court. Nor may he be seen as raising for the first time in a collateral attack the issue of his incompetency to stand trial.
>
> Since the policies underlying the rule of placing the burden of proof on *habeas* petitioners is not applicable to this situation, it is appropriate here to fashion an exception to the guiding principle regarding the placement of the burden of proof in *habeas* cases. *Cf. United States ex rel. McCloud v. Rundle*, 402 F.2d 853, 857 (3d Cir. 1968). Thus, because of the inconsistency of expecting a defendant like Hollis who asserts that he is incompetent to demonstrate that he does suffer from mental incapacity, and since the issue was raised but was not litigated prior to conviction through no fault of the accused, it

would not be appropriate for the burden of proof to be placed upon Hollis.

569 F.2d at 206–07 (footnote omitted).

The critical fact in *Hollis* which the Government has correctly highlighted (Tr. 21–22) but overlooked by Stokes is that the petitioner's incompetency was raised at the time of his arraignment. Both the court and the Government had notice that competency was not a satisfactorily established fact. By being placed on such notice, both the court and the Government were required to take action but failed to do so. It is this reason the court relied upon in reallocating the usual placement of the burden of proof. Where either the court or the Government had a duty to act in regard to establishing the defendant's competency to stand trial, and each failed to do so, then the petitioner will not be further prejudiced by placing upon him the burden to prove incompetency in the habeas action. The unmet burden originally placed upon the Government at trial will remain with the Government in the habeas action. This principle is made clear in the court's conclusion:

> Our conclusion is congruent with the intent of Congress as expressed in § 4244. *To put the burden of proof on a habeas petitioner such as Hollis, who raised the issue of his incompetency before pleading guilty but was not afforded an opportunity to establish incompetency prior to conviction, would appear to frustrate the purpose of § 4244*, which is to guarantee that an incompetent defendant not be required to stand trial. *See United States v. Muncaster*, 345 F.Supp. 970, 973–974 (M.D.Ala.1972), *aff'd*, 5th Cir., 472 F.2d 1407, *cert. denied*, 412 U.S. 963, 93 S.Ct. 3021, 37 L.Ed.2d 1011 (1973). In the absence of any explicit indication by Congress that a petitioner such as Hollis should carry the burden of proof, we decline to hold that he does.

569 F.2d at 207 (emphasis added) (footnote omitted).[8]

---

**8.** The importance of this notice factor is further borne out in one of the court's footnotes:

The district court cited *Martin v. United States*, 463 F.2d 220 (3d Cir. 1972), for the

The facts in this case differ significantly from those in *Hollis.* Neither Stokes nor his counsel ever raised, either orally or in writing, the possible incompetency of Stokes to stand trial. A mental examination was never even requested. Thus, the Court and the Government were never expressly made aware of a possible competency question. That alone, however, would not excuse the Court nor the Government from failing to take action to ensure that Stokes was competent. If either had the duty to act independently and failed to do so, the *Hollis* rule might be applicable. *See Newfield v. United States,* 565 F.2d 203 (2d Cir. 1977).

Under 18 U.S.C. § 4244, the United States Attorney is required to file a motion with the court requesting a judicial determination of the mental competency of an accused whenever he "has *reasonable cause* to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense...." (emphasis added). Furthermore, the trial judge must hold a hearing or take other appropriate action, *sua sponte,* on a defendant's competence to stand trial whenever he entertains or reasonably should entertain a *good faith or bona fide doubt* as to the defendant's ability to understand the nature of the proceedings against him or to assist in his own defense. *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Stokes contends that the Government possessed "reasonable cause" and the trial court should have possessed a "good faith doubt." The only evidence he points to is his 1967–69 commitment at Beatty Memorial Hospital. Tr. 5. In his mind, knowledge of that commitment, actual or imputed, satisfies either standard. He argues:

> In the present case, the U. S. Attorney had knowledge of the defendant's prior institutionalization to Beatty Memorial Hospital as a result of a finding of criminal insanity in 1967. Notwithstanding such knowledge, however, the U. S. Attorney did not timely file a motion to determine Stokes competency. Likewise, after trial in 1975 and at the time of sentencing, the Court had before it Stokes record of prior incarcerations which showed that he was institutionalized from 1967 to 1969 as a result of criminal insanity. Like the U. S. Attorney, the Court failed to order a competency examination at that time.

Petitioner's Memorandum at 3–4. Although the Government weakly argued at the hearing that it never had knowledge of Stokes' commitment, such knowledge can be imputed based upon the Federal Bureau of Investigation's "rap sheet" and the presentence report prepared by the federal probation office (Government's Ex. 2), each of which noted the Beatty commitment.

■ It is the holding of this Court that evidence of the Beatty commitment, standing alone as it does, satisfies neither the "reasonable cause" standard under § 4244 nor the "good faith doubt" standard imposed upon the trial court by due process. The primary reason for this holding is that Stokes was released by hospital officials after the Lake County Superior Court found, on May 8, 1969, that there was no

---

proposition that in a § 2255 proceeding the burden of proving incompetence rests upon the moving party. In *Martin,* the appeal from a denial of a motion to vacate sentence pursuant to 28 U.S.C. § 2255 was predicated on the grounds of mental incompetence resulting from drug use. This Court affirmed the judgment of the district court that the defendant was competent. However, the fact pattern in *Martin* varied considerably from the case at hand. *Martin's* counsel, at a bail hearing, had specifically urged that the

defendant was no longer addicted to narcotics. More importantly, at the competency hearing itself, the defendant and his attorney indicated that no evidence would be offered on defendant's behalf to show mental incompetency, because of the use of drugs, at the time of trial or sentencing. *Thus, unlike Hollis, the petitioner in Martin, while raising the issue of incompetence, presented no evidence whatsoever in support of the allegation of incompetency.*
569 F.2d at 203–04 n.5 (emphasis added).

longer "a high probability of recurrence" of insanity. Pursuant to applicable law, Stokes could not have been released until such a finding was judicially made. Thus, while not given a perfect bill of health, Stokes could be considered to have been given a clean bill of health. This is verified by the Beatty records (Petitioner's Ex. 2). Even though the hospital staff's judgment and decision may be challenged, as Stokes does in his habeas petition, their decision that Stokes was no longer in need of hospital treatment and could therefore be released must be entitled to considerable weight. Furthermore, during the intervening years, nothing occurred, and more importantly, nothing was presented to the Court or the Government about that period of time which would change the considerable weight to which the Beatty release was entitled. Simply stated, a prior commitment, such as the one here where the patient is later released after the reason for the commitment is no longer present, coupled with the passage of six years with no outward indication during that time that the patient had suffered any relapse, is not enough to trigger any unilateral action by either the Government or the trial court itself.

Inasmuch as Stokes places complete reliance on the Beatty commitment in seeking to reverse the general placement of the burden of proof, and in view of the above holding, the Court now finds that neither the Government nor the trial court erred in failing to take action at the time of trial to ensure that Stokes was competent. The Court now reaffirms its oral holding that the burden rests with Stokes to show that he was incompetent to stand trial.

■ Turning to the merits, the only witness called by Stokes·was Dr. Walter Feldman, a psychiatrist and attorney experienced in the field of forensic psychiatry which concerns the legal implications of psychiatric occurrences. Dr. Feldman talked with Stokes, reviewed the Beatty Hospital records and the Springfield psychi-

atric report prior to testifying. Based on his study of all this information, his conclusion was that an opinion regarding Stokes' competency to stand trial could not be rendered. Tr. 35.

The Court is of course respectful of Dr. Feldman's opinion and understands it. However, it must reject his conclusion that a retrospective determination cannot be made in this case. As will be discussed later, the Court finds sufficient contemporaneous evidence to make a reasonably accurate retrospective determination. This evidence was never considered by Dr. Feldman prior to his testifying. Assistant United States Attorney Altman brought out on cross-examination Dr. Feldman's failure to review the trial record and to talk with the prosecuting attorney, defense counsel, the trial judge and the probation officer. Tr. 44–46. All of these individuals supplied extremely valuable, probative and highly credible evidence concerning the competency of Stokes at the time of his trial.

In light of the fact that the burden was upon Stokes to show incompetency, and his only meaningful evidence was Feldman's testimony that a retrospective determination could not be performed in this case,[9] the Court is left with no choice but to hold that Stokes failed to satisfy that burden and to deny his petition for a writ of habeas corpus.

## II.

Although the Court has earlier held that the burden of proof in this action rests with Stokes, the same finding of competency would result even if the burden of proof were reversed. In an effort to put an end to this case, the Court will explain why the same decision would be made even if the burden had been placed with the Government to prove by a preponderance of the evidence that Stokes was competent to stand trial in 1975.

The initial issue which must be discussed in this regard is an argument that rests at

---

**9.** The documentary evidence tendered by Stokes contributes little to the competency

question because it is not contemporaneous with the 1975 trial.

the heart of Stokes' Memorandum; that this Court is unable to conduct a meaningful competency determination some 6 years following the trial. As a result, Stokes contends that his petition for relief must be granted.

■ This Court is quite mindful of the risks connected with *nunc pro tunc* competency hearings. *See Drope v. Missouri*, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). But the general rule is that such inquiries are proper if there is sufficient evidence available to reasonably ensure that a reliable determination of competency can be made. *See Pate v. Smith*, 637 F.2d 1068, 1072 (6th Cir. 1981); *Bolius v. Wainwright*, 597 F.2d 986, 988 (5th Cir. 1979); *Martin v. Estelle*, 583 F.2d 1373, 1374 (5th Cir. 1978); *United States v. Hollis*, 569 F.2d 199, 203 (3d Cir. 1977); *Bowers v. Battles*, 568 F.2d 1, 4 (6th Cir. 1977), *cert. denied*, 436 U.S. 910, 98 S.Ct. 2246, 56 L.Ed.2d 409 (1978) and cases cited there; *United States v. Makris*, 535 F.2d 899, 904–05 (5th Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977); *Hayes v. United States*, 468 F.Supp. 179, 184 (S.D.Tex.1979). *See also Owens v. Sowders*, 661 F.2d 584 (6th Cir. 1981). The key inquiry is whether the evidence relates to observations made or knowledge possessed at or near the time of trial. Contemporaneous information is essential. The cases cited above list a number of sources of this type of evidence which include: (1) the observations of the trial judge, (2) observations and opinion of trial counsel, (3) observations and opinion of prosecuting attorney, (4) psychiatric examinations conducted at or near the time of trial, (5) the trial record (especially where the defendant has testified on any issues), and (6) observations and opinions of other individuals who interacted with the defendant at or near the time of trial. This listing is not exhaustive of all relevant factors to be examined but it does comprehensively summarize those which possess the most significant probative value. No one factor

is conclusive and the weight accorded each will vary on a case-by-case basis.

■ One factor which is heavily emphasized by Stokes is the element of time itself. *See United States ex rel. Rivers v. Franzen*, 522 F.Supp. 443 (N.D.Ill.1981), *appeal pending*, No. 81–2599 (7th Cir. 1982) (lapse of some eight and one-half years, coupled with the transitoriness of the mental condition, made the prospect of accurate reconstruction remote). This Court is not prepared to set forth any *per se* time deadline for the ability to conduct retrospective determinations. Rather, the important element of time will always be an inherent consideration in each of the six factors previously listed. It is those factors which must govern and the Court so holds.

■ An additional argument raised by Stokes needs to be discussed before the evidence is examined. Stokes contends that the "common thread running through" cases similar to this "is the existence of psychiatric evaluations done contemporaneous with trial." In essence, his argument is that without such psychiatric testimony, an accurate retrospective determination cannot be made. The Court rejects this argument. Contemporaneous psychiatric evaluation is only one factor that can be taken into consideration. It is not the final or only authority on the issue. The absence of any psychiatric evidence will not necessarily result in making such a retrospective determination impossible or even more difficult. It is one, and only one, factor which might assist the court. In support of his argument, Stokes relies upon *Pate, supra.* But that court did not treat psychiatric evidence as a type of absolute requirement as Stokes would have this Court do. The court only held that the existence of such psychiatric evidence made the case "particularly susceptible of determination." 637 F.2d at 1072. The court in fact emphasized that a review of all relevant factors needs to be conducted. The absence of contemporaneous psychiatric testimony in this case does not render fatal the ability of this Court to make a reasonably accurate retrospective determination.

■ The Government's case was made up of four witnesses: (1) Fred Grady, then Assistant United States Attorney who prosecuted the case against Stokes; (2) Richard Counts of the Springfield, Missouri Medical Center, Unit Manager of the Forensic Psychiatric Service; (3) Paul Panther, United States Probation Officer who prepared the presentence report on Stokes; and (4) Richard James, Stokes' defense counsel. The Court expressly finds that the testimony of Panther and James to be especially valuable and probative in examining this competency question. Their memory and recollection were surprisingly very good and the Court is thoroughly satisfied that the evidence supplied by these two men accurately reconstructs Stokes' competency to stand trial in 1975. Grady's testimony, while also good in memory and recollection, does not carry the same weight because of his lesser contact with Stokes. The evidence supplied by Richard Counts and the Springfield report do not significantly assist the Court. Even the Government admits that the "reports are entitled to little or no weight." *See* Government's Memorandum at 4. The Court will give little weight to the reports but they do corroborate the testimony of Panther and James. That testimony will now be discussed in detail.

### Paul Panther

Panther is the Chief Probation Officer for the Northern District of Indiana who has served as a probation officer since 1969. Tr. 126. The Court considers him to be extremely able and experienced at his job. Panther is the probation officer who prepared the presentence reports for both of Stokes' convictions, including the one at issue here. Tr. 126–27. While preparing the report, Panther became aware of Stokes' commitment at Beatty, Tr. 130, and included this fact in the final report. Tr. 131. In his meetings with Stokes, he found him to be "cooperative," "friendly," "intelligent," and "able to discuss all aspects that we dealt with during the pre-sentence re-

port." Tr. 131. An important exchange with Assistant United States Attorney Altman during the hearing was as follows:

Q Did you notice that he had any problem in understanding the nature of the offense for which he'd been convicted?

A No.

Q During this period of time, did he have any complaints about the handling of the case by his trial counsel, Richard James?

A No.

Tr. 131. Panther testified that he has experienced instances where while preparing his presentence report, he sees signs of a mental illness. Tr. 132. In such situations, he would advise the court along with a recommendation as to how best to proceed. Tr. 132–33. The same would be true if any signs of incompetency were discovered. Tr. 133–34. With respect to Stokes, Panther stated that he did not have any question as to Stokes' competency to stand trial. Tr. 134.

### Richard James

James, a former Assistant United States Attorney, is a most able and experienced trial lawyer who was appointed counsel for Stokes in both of his criminal proceedings. Tr. 143. He entered the case in question sometime in late July or early August of 1975. Tr. 143. Prior to this time, Stokes had been represented by Donald Eisenberg, who had filed various pretrial motions on behalf of Stokes. Tr. 143–44. James reviewed the case and those motions and believed nothing additional needed to be performed at the time. Tr. 144. Eisenberg had filed no motions with respect to Stokes' competency. Tr. 144. James took no action with respect to Stokes' competency because there was nothing before him which indicated that a competency problem existed. Tr. 144–45.[10] Stokes helped James prepare for the case by assisting him in under-

---

10. In his habeas petition, Stokes claims that he informed his trial counsel that he was insane at the time of the offense as well as incompetent

to stand trial. James' testimony is in direct conflict. The Court credits James' testimony.

standing the complex elements of the conspiracy charge created by the unusually large number of unindicted co-conspirators. Tr. 146. Stokes played a role in jury selection and trial tactics. Tr. 147. During the course of his representation of Stokes, James came to know him very well, including his family, Tr. 150, and didn't feel there was any need to raise mental capacity at those trials. Tr. 147–49, 152–53. James also believed that Stokes' understanding of the proceedings as explained by James to him was at least as good as the normal client. Tr. 152. One significant piece of evidence concerns the interaction of James and Stokes regarding whether Stokes should testify at his second trial. Tr. 154–55. The Court considers this evidence highly significant as to whether Stokes was able to effectively assist James in the presentation of the case.

### Fred Grady

Grady was the Assistant United States Attorney who prosecuted Stokes and was present at all pretrial and sentencing proceedings. Tr. 60. Prior to trial, Stokes' counsel did not indicate there was any problem with Stokes' competency, Tr. 61–63, nor was there anything else that suggested a competency problem. Tr. 62, 71. Grady had previous experiences where he needed to act to establish a defendants' competency before proceeding to trial. Tr. 64. Grady's meetings with Stokes were for generally brief periods of time and involved, not surprisingly, the criminal action. More specifically, he discussed the newspaper incident, Tr. 66–67, the meeting in the cell, Tr. 67–68, the reaction of Stokes when he learned of a co-conspirator's acquittal, Tr. 68–69, and other contacts. Tr. 70.

The Court finds Grady's testimony helpful but not particularly valuable. His contact with Stokes was limited and the Court doesn't consider it essential to rely on Grady in light of the particularly valuable and probative evidence supplied by Panther and James.

### Springfield Report

The Court places little weight on this report for two reasons. First, the inability of Stokes to cross-examine the psychiatrists who examined Stokes and prepared the report. Second, the serious doubt held by the Court that any psychiatrist could make a reasonably accurate determination some 5 years earlier absent contemporaneous evidence. See Tr. 112. Nevertheless, the Court elects to cite various passages of the report which corroborates the testimony of Panther, James and Grady as well as the decision of the Court.

Dr. R. H. Eisaman rendered this opinion: OPINION: It is the opinion of the examiner that Mr. Stokes was mentally competent to stand trial 1 June 1975 through 31 March 1976. There is no positive history for mental illness, although Mr. Stokes was committed 1967 to 1969 to the Dr. Norman M. Beatty Memorial Hospital in Westville, Indiana (a hospital for the criminally insane). Their diagnosis, from the records available, sustain the opinion that there is no mental illness that would effect his competency. The definitive opinion will await the patient's final evaluative forensic staffing at the U. S. Medical Center.

And Psychologist David L. Reutertors rendered this analysis and opinion:

CLINICAL FINDINGS: Mr. Stokes displayed a cooperative attitude when interviewed. He was untidy and somewhat disheveled in personal appearance in that he had not shaved for many weeks. He spoke in an appropriate manner at an average pace. Mr. Stokes affective state when interviewed was appropriate. His thought process provided no indications of a thought disorder. His thought content displayed no abnormalities. No perceptual disorders were evident. Mr. Stokes did not complain of having any physical complaints. He was oriented with respect to time, place, person and situation. His memory for recent and past events was not impaired.

Mr. Stokes received a projected intelligence quotient of 87 on the Shipley Insti-

tute for Living Scale which placed him in the dull normal range of intellectual functioning. This is consistent with the subjective impression formed from interviewing this individual. His performance on the Memory for Designs Test did not suggest the presence of organic impairment.

Mr. Stokes did not attempt to distort his personality characteristics in the manner he completed the Minnesota Multiphasic Personality Inventory. His personality profile is considered a valid reflection of his current personality functioning and indicated that Mr. Stokes has an inability to delay gratification and is likely to become quite irritable and act impulsively in response to minor frustrations or obstacles. He also tends to be rather withdrawn, aloof and anxious in his social interactions.

Mr. Stokes' responses on the Competency Screening Sentence Completion Test were rational and coherent. His respons-

es indicated a good layman's understanding of legal procedures. His overall score placed him well within the competent range of functioning. This is consistent with the subjective impression formed from interviewing this individual. It is the opinion of the undersigned examiner that between the dates of June 1, 1975 and March 31, 1976 Mr. Stokes was not suffering from a mental illness or defect. He was competent to stand trial at that time and was able to understand the proceedings against him and properly assist an attorney in his defense.

The Government has also cited various passages from Stokes' trial. These include: (1) Stokes testimony regarding the voluntariness of his confession (Trial Transcript at 1386–93); (2) sidebar conference wherein James informs the trial court of Stokes' decision not to testify (Trial Transcript at 2111–12); and (3) Judge Sharp's finding of competency (Transcript of Proceedings held on July 10, 1980 at 41).[11] After reviewing

11. Judge Sharp's statement included the following:

THE COURT: This Court can and this Court does take judicial notice of the record in the criminal trial that this judge presided over. Nothing that the Court of Appeals said in any way inhibits that judicial knowledge. This Judge presided at that trial and observed throughout that trial the demeanor and manner of the defendant, his dealings with his lawyer—although I'm certainly not privy to the private conversations between him and his lawyer, and shouldn't be and wasn't—but I did observe him and have observed him in court throughout the proceedings in this case.

The evidence in this case shows beyond any reasonable doubt that this defendant was the operator and head of a highly structured and organized drug distribution ring. That alone, in my judgment, strikes very strongly against any mental incompetency at the time of trial in this case.

\* \* \* \* \* \*

I realized what the Court of Appeals has said, and I have never believed that I could totally rely on my own observations, but I agree with them—I don't have any option not to agree with them—but I agree with them. But I did not believe that I am precluded from remembering what I saw and what I heard as a presiding judge of the trial of this defendant, and there was nothing in that trial or in the defendant's conduct to signal to me

in the slightest that there was the slightest problem with competency. That remains, my conclusion, to this very minute.

The testimony of John Stokes, a brother who is trying to get another brother out of prison, I find it to be very incredible. It's not clear. He is talking about things that kids do without being very explicit. I find it not to be very helpful on the issue that is before me. It isn't a question of whether Robert Stokes did some funny things when he was a child, even when growing up, it's a question of whether or not he was competent to stand trial here, and he had been out of Beatty for whatever reasons he had been in there for a long time. And the evidence is he was operating and responsible for a rather widespread criminal enterprise criminal activity that required considerable competency, and the evidence demonstrates that—at least to me.

With all deference to the efforts of very able counsel who took an appointment at the Court's request, I simply cannot find on the basis of the record that is now expanded, and what I now believe and find to be in full compliance with the mandate of the Court of Appeals that—and if the burden of proof is on the Government at this point—and I'm willing to assume that it is—the reports from Springfield, in my judgment, fully indicates the burden of proof to establish that the defendant was fully competent at the time of his trial.

these passages, the Court agrees with the Government's original analysis of this evidence which appears on page 2 of this Memorandum.

The Court also considers highly significant Stokes' failure to testify at the November 24 hearing. Who better to explain his misunderstanding of the proceedings against him or his inability to assist counsel. Furthermore, no evidence was presented from Stokes' family which might have shed considerable light on Stokes' mental condition in 1975.

Essentially, the Government's case stands unrebutted and the Court finds it very persuasive. The key evidence upon which the Court relies was supplied by Panther and James. Each man had close interaction with Stokes. Each man is experienced and able and completely knowledgeable of the competency standards. Each man expressed no doubts that in his opinion, Stokes satisfied those standards. The facts supporting these opinions were discussed earlier. The testimony of Grady and the Springfield report, while entitled to little substantive weight, do corroborate the detailed testimony of Panther and James. The Court has reviewed the trial transcript and finds nothing which would suggest even the slightest possibility of incompetency. While Stokes did not testify at trial, he did briefly testify at the suppression hearing and there is nothing there to even remotely suggest incompetency. This supports the observations of James, Grady and Judge Sharp.

### Conclusion

The Court is indeed fortunate to have before it sufficient and credible evidence to be able to reconstruct Stokes' condition in the fall of 1975. Frequently at the November 24 hearing, Stokes attempted to establish that he was the victim of a hidden mental illness that would have been discovered if a psychiatric examination would have been performed. Tr. 33, 108–09. That is not the question which was mandated by the Court of Appeals for this Court to decide nor is it particularly relevant to the legal standards governing competency. Understanding of the proceedings and the ability to assist counsel are the standards. This Court now formally finds, based on all of the evidence and reasons previously discussed, that Stokes was able to do both in the fall in 1975 and is therefore declared to have been competent. The petition for writ of habeas corpus is hereby DENIED.

---

There is no credible evidence to support any conclusion that after he was discharged from Beatty in '69 or '70 that there was any reoccurrence of any of the problems that existed before that. The matter has been here now for over six months, numerous proceedings have been had, counsel has been appointed, and extensive examinations have taken place, discovery of records has been had, and I now conclude and find the Court has fully, carefully, and completely complied with the mandate of the Court of Appeals, and that at the time of the trial of the defendant in 1975 he was fully competent to stand trial. Nothing in the record would indicate the contrary to me.