**UNITED STATES of America, Plaintiff,**

v.

**Adam O. RENFROE, Jr., Defendant.**

**Crim. A. No. 86–23 LON.**

United States District Court,
D. Delaware.

Jan. 29, 1988.

Edmond Falgowski, Asst. U.S. Atty., Dept. of Justice, Wilmington, Del., for U.S.

Nathan Z. Dershowitz, and Victoria B. Eiger, of Dershowitz & Eiger, New York City, for defendant.

## OPINION

LONGOBARDI, District Judge.

On June 12, 1986, the Defendant, Adam O. Renfroe, Jr., was convicted of bribing a

witness in violation of 18 U.S.C. § 201(d) and obstruction of justice in violation of 18 U.S.C. § 1503. A post-trial due process and sentencing hearing was held on July 28, 1986, at which time the issue of Defendant's competency at the time of trial and sentencing was first raised. Defendant's motion to postpone sentencing in order to conduct a competency hearing pursuant to 18 U.S.C. § 4241 was denied by this Court.[1] This Court held that "there is no evidence before the court which leads the court to conclude that the defendant is incompetent to proceed during the sentencing procedure." Transcript ("Tr.") at 79; Docket Item ("D.I.") 59.

On appeal, the Third Circuit remanded this case back to this Court to determine the threshold question of whether a meaningful *nunc pro tunc* competency hearing can be held to determine if the Defendant was legally competent at the time of his trial and sentencing.[2] Were this Court to determine it could not conduct a meaningful hearing on competency, the Defendant's conviction would be overturned and a new trial granted when Defendant is competent to stand trial.

The Defendant contends that a meaningful *nunc pro tunc* hearing is impossible in this case due to the lack of contemporaneous psychiatric evidence. Defendant further argues that the nature of Defendant's problem, cocaine addiction, makes it particularly difficult to conduct a meaningful retrospective psychiatric examination. *See* Affidavit of Dr. Weiss at 3–4; D.I. 74.

On the other hand, the Government maintains that in spite of the absence of a contemporaneous psychiatric examination, a meaningful *nunc pro tunc* hearing is possible in this case due to the number of different sources of available contemporaneous evidence.

■ Our adversary system of criminal justice is premised upon the principle that a defendant must be mentally competent before he can be made to stand trial. The test for competence was first articulated by the Supreme Court in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed. 2d 824 (1960). In *Dusky,* the Supreme Court defined the test for competence as "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him." *Id. Accord, United States v. Hollis,* 569 F.2d 199 (3rd Cir. 1977). In cases such as this one, where a competency hearing did not take place at the time of trial or sentencing, the possibility of a retrospective determination of competency can be considered. *United States ex rel. McGough v. Hewitt,* 528 F.2d 339, 344 (3rd Cir.1975).

This Court is fully cognizant of the oft-repeated difficulties and risks associated with retrospective determinations of competency. However, in cases where there is sufficient available evidence to insure that a reliable determination can be made, such an inquiry is proper. *Stokes v. United States,* 538 F.Supp. 298, 307 (D.Ind.1982). *See also United States v. Johns,* 728 F.2d 953, 957 (7th Cir.1984) (court is cognizant

---

1. The text of 18 U.S.C. § 4241 reads in pertinent part as follows:

    (a) *Motion to determine competency of defendant.*—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of

the proceedings against him or to assist properly in his defense.

While this Court presented the issue as an application by defense counsel pursuant to 18 U.S.C. § 4244 (motion to determine present mental condition of convicted defendant), the Third Circuit construed counsel for the defense's application as a motion pursuant to 18 U.S.C. § 4241.

2. In addition to challenging this Court's refusal to hold a section 4241 hearing, the Defendant also challenged his conviction on due process grounds, the Court's admission of prior bad act testimony, and his conviction under section 1503. The Third Circuit summarily affirmed.

of possibility of conducting a *nunc pro tunc* determination of competency); *United States v. Makris*, 535 F.2d 899, 904 (5th Cir.1976) (court has repeatedly sanctioned *nunc pro tunc* proceedings where there is sufficient data available to guarantee reliability).

The determination of whether a meaningful retrospective determination of competency can be made is a legal inquiry which "the court must make for itself." *Makris*, 535 F.2d at 905. Because the meaningfulness inquiry is a threshold legal determination, it is not a ruling on the substantive issue of a defendant's competence. "The meaningfulness determination is a threshold legal inquiry which is not measured against the same scale as the later ruling on the merits." *Bruce v. Estelle*, 536 F.2d 1051, 1057 (5th Cir.1976).

The importance of contemporaneous evidence is underscored by the fact that in appropriate cases, the passage of even a considerable amount of time will not prevent such a hearing. *Makris*, 535 F.2d at 904. In *Makris*, the court emphasized that "sufficient evidence in the record derived from knowledge contemporaneous to trial" was what was crucial to a determination of whether a meaningful *nunc pro tunc* hearing could be conducted. *See also Estelle*, 536 F.2d at 1057 (nine year gap between trial and competency hearing not a *per se* bar); *Conner v. Wingo*, 429 F.2d 630, 639 (6th Cir.1970) (seven year delay from trial to competency hearing); *Stokes*, 538 F.Supp. at 307 (six year delay not a bar to court holding *nunc pro tunc* competency hearing). In *Stokes*, the court stated that contemporaneous evidence was what was essential to the meaningfulness inquiry not the passage of time. *Id.* Indeed, if the passage of time was dispositive, then retrospective competency hearings as a general rule would be prohibited.

The sources of available contemporary evidence which courts have considered important to the meaningfulness inquiry can be broken down to include:

(1) the observations of the trial judge; (2) observations and opinion of trial counsel; (3) observations and opinion of prosecuting attorney; (4) psychiatric examinations conducted at or near the time of trial; (5) the trial record (especially where the defendant has testified on any issues); and (6) observations and opinions of other individuals who interacted with the defendant at or near the time of trial.

*Stokes*, 538 F.Supp. at 307.

No one factor is conclusive and the absence of any one source of evidence does not preclude the possibility of conducting a meaningful *nunc pro tunc* competency hearing. Rather, the determination of meaningfulness must be made on a case-by-case basis. *Id.* For example, where, as in this case, there is an absence of contemporaneous psychiatric evidence, that, in point of fact, is only one factor in the mix of evidence for a court to consider. In *Stokes*, the court concluded that "the absence of contemporaneous psychiatric testimony ... does not render fatal the ability of this court to make a reasonably accurate retrospective determination." *Id. Accord, Johns*, 728 F.2d at 957.[3]

▮ The possibility of conducting a meaningful *nunc pro tunc* competency hearing in this case must begin with a consideration of the available contemporaneous sources of information. The Court notes at the outset that the relevant sources of information identified in *Stokes*, and discussed *supra*, provide a useful structure for analysis. In this case, the observations of the trial judge will be particularly useful given that he was able to observe the Defendant in three separate situations; namely, the Defendant's pre-trial hearing on June 3, 1986, his trial from June 4, 1986, through June 12, 1986, and his due process and sentencing hearing on July 28, 1986. The recollections of the trial

---

**3.** In *Makris,* the court noted that, notwithstanding the value of contemporaneous psychiatric evidence, "the recollections of non-experts (including the observations of the trial judge) who had the opportunity to interact with defendant during the relevant period may in some instances provide a sufficient base upon which a fact-finder may rest his decision that even a belated determination will be accurate." *Makris*, 535 F.2d at 905.

judge, when available, increase the possibility of conducting a meaningful *nunc pro tunc* competency hearing. *Hewitt*, 528 F.2d at 344; *Makris*, 535 F.2d at 902.

Similarly, the observations and opinion of trial counsel are available in this case in addition to those of the two Assistant U.S. Attorneys who prosecuted the Defendant. As the Government notes in its brief, the prosecutors can testify as to their observations of the Defendant in and out of the courtroom throughout the three proceedings. In particular, they can testify as to the active role taken by the Defendant in jury voir dire, side bar conferences and his apparently active participation during defense counsel's cross-examination of Government witnesses. Government's Brief at 4; D.I. 69.

Another important source of contemporaneous information involves psychiatric examinations of the Defendant conducted at or near the time of trial. As noted *supra*, however, no such examinations were conducted.[4] While no contemporaneous psychiatric examinations were performed, medical reports and testimony concerning the Defendant's mental state are available to the Court. On June 20, 1986, and June 26, 1986, Dr. Steven Simring performed a psychiatric evaluation of the Defendant. In addition, the Court also has available a letter written by Dr. Karl Gallegos dated July 21, 1986, which summarizes the results of physical and psychiatric examinations performed on the Defendant while he was an in-patient at the Ridgeview Institute in Smyrna, Georgia.[5] Finally, Dr. Simring testified at the July 28, 1986, due process and sentencing hearing concerning his examinations of the Defendant as well as his explanation of Dr. Gallegos' report.

The Court not only has available the trial record which includes the pretrial hearing, six days of trial and the due process and sentencing hearing but even more significant is the fact that the Defendant testified on his own behalf. During the trial, the Defendant testified for two hours on direct examination and for one hour on cross-examination. Furthermore, the Defendant also testified for approximately one half hour at his due process and sentencing hearing. There are also those occasions when the Defendant participated in legal arguments during chambers conferences.

Another source of valuable evidence regarding the defendant's competency is the observations and opinions of other individuals at or near the time of trial. Indeed, in *Makris*, the court found the testimony of lay witnesses more persuasive than that of the medical experts. *Makris*, 535 F.2d at 905. In this case, there are a number of different sources and types of contemporaneous lay evidence. Those sources include the observations of the Assistant District Attorneys who prosecuted four different felony cases in the Philadelphia Court of Common Pleas in which Renfroe represented the defendants. The Defendant represented those defendants between the time of his indictment and sentencing. Furthermore, on July 27, 1986, defense counsel, Raymond Brown, submitted letters of recommendation to the Court from six different Philadelphia area attorneys attesting to the Defendant's reputation with the bar for being an effective trial attorney.[6] In addition to the testimony of Defendant's professional colleagues with whom he interacted, the Defendant's family members could

---

4. The Court notes that the issue of Defendant's competency was first raised at the due process and sentencing hearing on July 28, 1986. Indeed, during that hearing counsel for the Defendant testified that "quite frankly, when I embarked on this course, it was not my intention to question competency in terms of capacity to stand trial or capacity to withstand sentence." Tr. at 37; D.I. 59.

5. Defendant was admitted on July 11, 1986, to the Ridgeview Institute for detoxification and treatment for cocaine addiction.

6. Mr. Brown also submitted on July 27, 1986, letters of recommendation from two Pennsylvania State Representatives which attested to Defendant's intellectual competence and respected reputation among his colleagues as well as a letter written by a personal investigator which describes the Defendant as an "astute businessman." Government's Brief at 8; D.I. 69.

provide information regarding their observations of Renfroe at the time of his trial.

The Court has available one affidavit from a medical expert submitted on behalf of the Defendant which attests to the fact that a retrospective hearing is not possible. *See* Affidavit of Dr. Roger Weiss. D.I. 74. The Court finds that affidavit unpersuasive. Dr. Weiss' affidavit appears to discount the abundance of contemporaneous evidence that is available in this case and focuses only upon the lack of contemporaneous psychiatric evidence and the impossibility of conducting a retrospective psychiatric examination of the Defendant. However, testimony by the Defendant's own medical expert, Dr. Steven S. Simring, at the July 28, 1986, due process and sentencing hearing, appears to conflict with Dr. Weiss' conclusion that a retrospective psychiatric examination is impossible. At the July 28 hearing Dr. Simring indicated that while he was unable at that time to render an opinion as to the Defendant's competency at the time of trial and sentencing, he would be able to do so after the Defendant was detoxed and further testing and information were assembled (including interviewing Defendant's colleagues and family). Tr. at 57–58; D.I. 59. On the other hand, the Court finds the affidavits submitted by Dr. Sadoff, Dr. Johnson and Dr. Leach to be persuasive. *See* Affidavit of Dr. Robert L. Sadoff and Affidavit of Dr. James R. Leach, attached to D.I. 69; Affidavit of Dr. Sally C. Johnson. D.I. 70. Those affidavits conclude that a meaningful retrospective competency hearing is possible in this case based upon all of the available evidence previously described.

For the foregoing reasons, this Court concludes that a meaningful *nunc pro tunc* competency hearing is possible.

Considering the history of this case and the bases of the Third Circuit's opinion on remand, the Court is considering ordering the Defendant to submit to psychiatric examination prior to the *nunc pro tunc* hearing. Obviously, the Court is concerned with the Defendant's present competence to understand these prospective proceedings and his ability to assist his counsel at

a level commensurate with the standards enumerated in *Dusky*, 362 U.S. 402, 80 S.Ct. 788. Indeed, the Third Circuit's admonition to make a determination about competency prior to re-trial would be equally applicable prior to a *nunc pro tunc* competency hearing. "If the district court determines that a meaningful hearing is no longer possible, Mr. Renfroe's conviction must be overturned and a new trial may be granted when he is competent to stand trial." *U.S. v. Renfroe*, 825 F.2d 763, 768 (3rd Cir.1987).

The parties may submit letter memoranda of no more than five pages either approving or arguing against such procedure. The Court will expect simultaneous submissions which must be received no later than February 5, 1988.